My case for argument this morning is 13-1535 In Re The Newbridge Cutlery Company. Mr. Is it Rabel? Whenever you're ready. May it please the court, Philip Rabel on behalf of the appellant, the Newbridge Cutlery Company. Newbridge Cutlery Company is an Irish company that has been in existence for nearly 75 years. It's undisputed that it does business and its headquarters is in Newbridge, Ireland, a town of approximately 20,000 people in County Kildare in Ireland, the 17th largest municipality in the country. Newbridge Cutlery sought to register its trademark here with the Patent and Trademark Office. Registration was denied and the deny was upheld by the TTAB on the basis A deferential standard of review here, right? Excuse me? A deferential standard of review. With respect to factual findings, correct. With respect to issues of law, reviewed to no vote. So what would have been sufficient? What nature, what kind of evidence would have been sufficient in your view to establish that there was a primary, in terms of the burden of showing primary significance? Well, in terms of the burden to show that it was a primarily geographic terminal. Well, first of all, I think that the examiner should have dealt with the unrefuted evidence that the term Newbridge in and of itself is not primarily geographic. In fact, there are some 21 other Newbridge towns and villages in England and Ireland and elsewhere in the world. There are numerous companies here in the United States and abroad which use the term Newbridge. Newbridge Frank. There's a Newbridge nursing home in Massachusetts. There are Newbridge consulting companies. There's just a raft of Newbridges. They're at pages 298 through 326. That doesn't in and of itself establish that it can't be of primary significance, right? That's correct, but it does establish that in the minds of the public, they will not necessarily associate the term Newbridge with a particular, first with a geographic location because it's sort of generic and it's used all over the place for all sorts of things. And moreover, the fact that there are 21 Newbridges means that they would have to associate the term not only with a geographic location, but with that particular Newbridge, which is, in our view, at a minimum, remote and obscure in Ireland. So there are several steps that have to be taken before one could conclude that the Newbridge that we're talking about here with our company is, first of all, a geographic location. How could they do that? What kind of evidence? Would they have to have conducted a survey or some sampling of the population? I think they would have to demonstrate through the relevant purchasing public, that being the public in the United States, which purchases housewares, which Newbridge sells, that that segment of population, a bulk of them, would conclude upon hearing the term Newbridge cutlery or Newbridge home, that there was an awareness that these products came from Newbridge, Ireland. And I don't think that they're in the raft of international – Is that your view? I mean, that can't be – we don't require them to do a test, to do a survey in all cases. So are you suggesting that's the only thing? Are you suggesting that would have been necessary because of all of the other evidence you had in terms of the 21 other – I think given, first of all, the fact that it's not primarily geographic, number one, and it is also remote and obscure, the examining attorney and the TTAB were obliged – Well, what makes it remote and obscure? I mean, they use – okay, so there's population 20,000. We see it cited and various things. How does one – it seems quite subjective, doesn't it? Well, it's – I mean, in our view, these are ad hoc determinations, and that's part of the problem. I mean, there's a town 30 miles from here with a population of either 50 or 80,000 people, Ashburn, Virginia, depending on the population, depending on which Internet site you look at. And there the TTAB found that Ashburn, Virginia, 30 miles from here, was remote and obscure, whereas Newbridge, Ireland, one of 21 Newbridges, with a population of 20,000, is not remote or obscure. So I think part of the issue is that there's no real objective standard, and given the rise of the Internet and the availability of minutia with respect to virtually any place on Earth, you can make an argument either way all the time. And there are no – there's no basis in these close calls for doing one or the other, and it can go either way without – and it's just this sort of contradictory determinations. There's no basis for finding that Ashburn, Virginia is not remote or – is remote or obscure. Newbridge, Ireland is. Namibia – I mean, Windhoek, capital of Namibia. I understand that remote and obscure language comes from the case law, but the statute doesn't make any of those distinctions. It just says you can't register a mark that's primarily geographically distinctive. That's correct. So isn't the real question whether the consumer of these types of goods would understand whether this mark suggests that these goods come from Newbridge? Well, the term primarily, as I understand it, is the term that gives rise to the issue of remote or obscure or whether it is actually geographic. Well, I don't understand that at all. I mean, something can be primarily geographic and still be a pretty remote location. It just has to be the mark itself has to convey primarily a geographic meaning. Isn't that right? That's correct, but it has to be one that's readily recognizable to the general public as geographic. Well, let me ask you this. This is what I'm getting at. Do they have to understand that it is from a specific Newbridge, or do they just have to understand that this mark is indicating that these goods come from a geographic location called Newbridge? I think they would have to understand it's from a specific Newbridge. And that's based on the case law, I take it. I don't know that any cases addressed it, but it doesn't make sense to me that it could mean – Well, if somebody looks at a mark and their main understanding of it is this is interpreting, this is conveying the notion that these goods come from a specific place, from a place, from a geographic place. Let me leave out specific, from a geographic place. Why isn't that primarily geographically descriptive? That is primarily geographically descriptive, but in the appellant's view – So if the average consumer of these types of goods would understand that the mark Newbridge Home specifies home goods that come from Newbridge, do they have to know that it's Newbridge, Ireland, or do they just have to recognize that it's a geographic mark? I would argue that they would have to know it's from Newbridge, Ireland, because the purpose of this statute is to prevent persons from basically monopolizing a mark from a well-known geographic area and saying New York Art Gallery. Well, you threw in the words well-known there again. I don't understand where this – Or a readily recognizable place. Well, again, I mean isn't the purpose of – the statute doesn't talk about well-known versus obscure. It talks about geographically distinctive. So even if it's a really, really obscure place that nobody's heard of, as long as it conveys a geographic meaning, then that's enough, isn't it? Well, no. If it's a place no one's heard of, then under the case law, then it's remote or obscure, and then the PTO is obliged to show that the relevant person – Right. I understand. That's what I'm trying to get at. You're drawing all this from the case law, but the statute I think doesn't make these distinctions between obscure and well-known. What if you had a mark that said Brown City Home? And the PTO could come up with substantial evidence showing that an average consumer would understand Brown City as to be a place. It's obscure, and it's obscure. Nobody's heard of it. But they know that it's a place because it has the word city in it. Would that be geographically distinctive? It would be geographically descriptive. That's what I mean. But the next inquiry would be whether it's remote or obscure. And if that inquiry – and that just – So in your view, the statute allows you to register geographically descriptive marks if they're remote or obscure and the people don't associate that mark with your goods. Yeah, that's what happened with Vattel in the Vattel case, in the Namibia case. But isn't the point of Vattel that Americans don't understand the word Vattel to mean anything geographic at all? Not that it's remote or obscure. Looking at the word Vattel, Americans don't understand it to be a geographic marker at all, whereas I assume the PTO would argue that when you look at the word Newbridge, they understand that to refer to a city called Newbridge. Well, I would argue no more than someone going to the Newbridge Bank here in the United States would think that it's related to Newbridge. Newbridge has a lot of connotations and a myriad of meanings, which is why, for instance, the independent living facility in Massachusetts is called Newbridge Independent Living Facility. There's Newbridge Consulting Companies. The word itself is not primarily geographic, I would argue, just as in there's a company that tried to trademark Hollywood fries. And first of all, in the case it says, if there's any doubt as to the primary significance of the word Hollywood, we resolve doubt in favor of the applicant, which would be us. That would be number one. Well, yeah, but the point of Hollywood fries is that the average person wouldn't understand that mark to be primarily geographically descriptive. They would understand it to be descriptive of fries, not fries that come from Hollywood. Well, they would understand it to – well, the company itself was in Culver City adjacent to Hollywood. But it's undeniable that Hollywood is a geographic location. It also has other meanings. Newbridge is a geographical location. It also has other meanings and other usages. My understanding of the case law is that on prong one of the tests is that we look to see whether the primary significance of the mark is the name of a place generally known to the American public, a place. And then, of course, the question is, do the goods come from that place or do they not come from that place? And from that, you can discern whether the question is whether it's primarily geographically descriptive or perhaps geographically misdescriptive. So I think we're talking about a place, not just the name of a city someplace. It's got to be a place. And the question I have here, the trouble I'm having with this, is whether there's substantial evidence to support the Patent Office's conclusion that the name Newbridge is generally well known to the American public as a place. Newbridge, Ireland. Well, I did reserve five minutes, and I'm well into it. That's okay. If I understand your question, I do understand your question of whether there's substantial evidence, which is the sort of deference you have to give. I would argue that there's not substantial evidence in the record as a whole. There's not substantial evidence. They have introduced a variety of obscure newspaper articles about someone who's being buried in Newbridge, Ireland or who died, who was born in Newbridge, Ireland or was going on a study abroad in Newbridge, Ireland, maybe 10 or 15 articles over a 14-year period. There's a bunch of other websites without any evidence that they've ever been accessed by in any significant way the American public. The TTAB itself in the Namibia case basically said, we're going to discount websites like Wikipedia and the Gazetteer because these are not dispositive of what the relevant public knows. They're just websites that are put up there without any reference to whether they're accessed by anybody. Part of the problem I think here, and it was flagged in 1987, this court said, it's astounding what a Nexus search can do to bring up obscure names of places. Since 1987, we are way beyond what Nexus was capable of back then. Can I just ask you another, just one quick question, which is, what is your understanding as to, Judge Hughes cited what the statute said, what is the policy that drives all of this? Is it exclusively that we don't want to preempt three people live in a town and why should you get to use this term for this and take it away from my ability to use it? Is that what's driving here, kind of a preemption thing? I believe it is, and there was a reference to we could eventually register under 2F for acquired use, but we're a 75-year company. We have to then come into the United States without trademark protection and be put at risk for the period of time needed to establish a presence here so that we can then register under 2F. This is essentially disincentivizing the company from coming here because – But preemption is the policy, and why does it make any difference whether the city is well-known or obscure? Well, the case law indicates that – I understand, but I don't understand how the statute says anything about a distinction between obscure or not. The policy of the statute is to prevent registration of geographically descriptive marks. That seems to me that if you have a town of five people, you still can't register a geographically descriptive mark of that town because you might exclude the other four people from using that mark. Well, I think you could – if we were to do it, no one else could do Newbridge Home, but someone from Newbridge could do any number of Newbridge applications. I think that when you're talking about a – well, proper application of the statute, I believe, does take into account the remoteness or obscurity of the town and the – whether or not it's readily recognizable to the public and whether or not the relevant public would make a goods place association with respect to the name. So while the issue of preemption is one aspect of it, it's not – it doesn't override all other sort of practical considerations as to whether or not there really is harm here by not having preemption because to the extent no one really identifies the city as a – the geographic name as a place or it's remote or obscure or the relevant public doesn't make the association, then there's no harm. So, I mean, I think you're right. One aspect of it is preemption, but it's balanced against these other considerations, particularly in our case, I would argue that we're a 75-year-old company from a small town in Ireland wanting to come here with some protection for our well-established intellectual property. Primarily in Europe, we sell a few things here but nothing of any significance. Essentially, the business decision that we're going to make is there's a big risk coming here without the protection that we think we should be entitled to. We'll – why don't you – let's hear from the government and we'll restore you five minutes at the bottom. Good morning, Chief Judge Prost and may it please the Court. I'd like to just start with three facts in this case. The first is that we know Newbridge is a city in Ireland. Newbridge is based in that city in Ireland and Newbridge Homes products that they're going to market under that mark come from that town. Well, we know that, but does that matter under the tests we've developed? It's whether the public generally knows it, right? Not whether we happen to know it because we read the briefs in this case. It's whether the mark as used in connection with the goods would convey that meaning to the consumer. That is, whether the consumer would see the mark and make the goods place association. Do you agree that it has to specifically point to Newbridge, Ireland, or can it just be geographically description? These goods come from a place called Newbridge. It does not have to specifically point to Newbridge, Ireland, if you are making the refusal because you're saying a consumer would see the mark and make a goods place association. Really? I mean, I read the PTAB decision is very much focused on we've identified this place, 20,000 people, tourists to Ireland, yada, yada. I didn't get just because a word connotes the name of a city or a place, that in and of itself is sufficient. Your Honor, this goes to whether or not a consumer would immediately make the goods place association. If you have a name like New York and you use the name New York in connection with goods, any consumer that sees that is going to say that's a goods place association. Because they know about New York and New York is a real thing that exists. Right, exactly. But you're suggesting that even if there are 1,500 Newbridges and even if there was one in Ireland that had two people in it, that would be sufficient because there's an association with Newbridge as a place even though the place people are thinking about is in Canada. If there were 1,500 Newbridges and every time an American consumer saw Newbridge, they thought it was a place name, then they would be making the goods place association. And if the goods actually came from that place, we would be able to presume that 2E2 is in place and there needs to be refusal. Where it gets tricky is when there is a possibility that consumers are not going to know that, that the mark might be obscure, that it might be remote. And that's when we dig into this deeper level of evidence and we say, well, because it might be obscure or remote, then we want the examining attorney to come up with some sort of evidence of an actual, not an actual goods place association in the mind of the consumer, but evidence that there would be such a goods place association. And that's when we turn to the evidence in the record that associates this Newbridge, Ireland with their company and their products. That's that second level of evidence that we look to in this case because of the possibility that the term Newbridge might not immediately connote the name of the location. Well, let's break this down a little bit because it seems to me you're conflating the two prongs that have been set out in the test that's generally applied. And the test was recognized by the board and set forth in the opinion where prong one is to determine whether the primary significance of the mark is the name of a place generally known to the American public. So that's step one. There's no goods place association at that point. So isn't it the burden of the patent office at that point to establish that the American public generally knows, in this case, Newbridge as the name of a place in Ireland? It's Newbridge, Ireland, the city of Newbridge. Not just that it's the name that could be a city. There may be 20 cities around the world. It's that, Your Honor, the primary significance of the term in that mark is as a geographic describer of the source of those goods. Just as a geographic – I mean, anything could be. There's a city called Happiness. I mean, any word can be the name of a city and probably is. And, Your Honor, that's why the Battelle case went the way it did because there was no evidence that people would even recognize Battelle as the name of a city. The evidence that they pointed to, they pointed to two types of evidence. Both work against them. The first type of evidence they pointed to is that there's lots of Newbridges and there's lots of cities. And that evidence suggests, I think, the assumption that when you see Newbridge, you think it's a city, which means when you see Newbridge in connection with goods, you're going to make the goods place association. The more cities named Newbridge, the more likely it is that you're going to make the goods. But that wasn't the PTAB's analysis that I read. Look at page 5. I mean, they say, applicant makes the argument. It's an unknown to the American consumers. However, and then they go on and on and on, not talking about Newbridge is just a city, talking about how generally known – they conclude that it would be generally known. They're talking about Newbridge, Ireland. They're not talking about Newbridge sounds like the name of a city or that there are several others and who cares which one it is. They are talking about – their analysis seems to be completely honed in on the generally known geographic place of Newbridge, Ireland. Yes, because, Chief Judge Prost, they are giving the applicant a little bit of benefit there and saying, in the event, even in the event that it's obscure or remote and people wouldn't immediately think Newbridge is the name of a town and then make the goods place association. We will now turn to the evidence that they would actually make a goods place association for these goods in this instance with that specific town. So what you're telling us is that the board said Newbridge isn't enough and that we are relying, therefore, primarily, if not exclusively, on the fact that Newbridge, Ireland is generally known. That's kind of different than what I thought you were saying. They are saying in the event that Newbridge is not enough, we will turn to the – Even that second part, the prior part, they are not – as I read the analysis, the evidence they supported that Newbridge was geographically descriptive wasn't all this large evidence that people would understand that to be the word of a place. It was all these references to stuff that essentially is found on the internet about drug companies in Newbridge, Ireland, a Michael Jackson tour in Newbridge, Ireland. Some reference to – and you can tell me what this is, but I don't understand how this is relevant at all. The Columbia Gazette, Tier of the World, which honestly I've never heard of until this case, and it sounds like it lists basically every location in the world. So how could that possibly be relevant evidence of what an average American would understand if it's a comprehensive guide to places in the world that I assume most people have never heard of? Your Honor, I would say most people have never heard of it because they use Wikipedia in its place. A gazetteer is a compendium that goes along – because I think it really does lead to the notion that just because you can find something on an internet search that the American public could know about, you can find anything on an internet search. I did an internet search to find what was roughly a comparable state to the size of Ireland, which was Indiana, and then I found what the internet told me was the 17th largest city in Indiana, which was Mishawaka. I'm from Ohio, the neighboring state. I have never heard of Mishawaka. So the internet stuff doesn't seem to me to be substantial evidence of what an average American would know. So if that's what you need, then I think you have a problem here. Your Honor, if I may, I think the internet stuff is the very best evidence of what the average American would know. This is not 1987 when Judge Rich was amused at what computer searches can turn up. People don't, at the end of the day, go to their desktop computer and fire it up and log on and do a search. People are searching the internet for products on the smartphone in their pocket. They are an instantaneous amount of time away from knowledge about New York City and Newbridge, Ireland. Newbridge Cutlery markets their goods on the internet through a website that practically wraps itself around the flag. I understand that. If we're talking about the preemption purpose of this statute, I kind of get there, but it sounds to me like if you follow the logic of that argument to its logical result, you're going to end up with no mark that has geographic meaning at all, not just to the average person is not going to be able to be registered. Because any person can sit down at a computer and Google the term, and they're going to find within maybe not the first 10 pages, but at some point the fact that it's tied to a specific location. And where we might end up, Your Honor, and I think I agree with you, that we might end up with fewer obscure places. Because I would submit there are fewer obscure places because we are all readily connected to the whole world right now. That's just how commerce has evolved over time. So your view is it's not obscure if they can find it on an internet search rather than knowing it before they go do the search? Yes. There has never been a requirement by this court that we have to show the consumers had something in their head. When we were affirmed in Lowe's Theaters, the issue there was the evidence was the Gazetteer entry. That was the sole piece of evidence. And the court specifically spoke to this. And the court said you cannot require an agency to poll the American public every time this issue comes up and find out what's in their head. You have to go to whatever evidence they have. The evidence in 1987, the evidence in the past was a Gazetteer. The evidence today is a Wikipedia entry. Now maybe we need to get to the point where you look at all the Wikipedia entries and you say, well, if it's Wikipedia entry number one, if you type in Newbridge and you get Newbridge, Ireland is number one, then that's not obscure, but if it's number 38. What about if it comes up on Wikipedia and it turns out it's the 140th smallest, you know, number 140 in terms of size in Ireland and it's got a population of 17 people? Does that change anything or is just the fact that that information appears on Wikipedia sufficient? If that is the evidence, and that's not the evidence here, but if that is the evidence, and based on that evidence there's a suggestion that the term is remote and obscure and that consumers would not make the goods place association based simply on the mark in connection with those goods because how would any consumer ever know that that's a place associated with the source of those goods? Then it would be proper, as the board did here, and as I think the test demonstrates should be done, to look in a little bit further and see is there actual evidence of a goods place association that people might know about? Can I take it back to kind of first principles, which is, I mean, I understand we've got this case law, but going back to the statutory citation that Judge Hughes alluded to and going back to the first argument you were making, which surprised me a little bit, which is are we just looking, is it the government's view that we are just looking at whether or not this is a location or are we really looking at the particular location? Whether the public would know this is a city anywhere in the universe or whether the public would know about this place in Ireland. In the first instance, we are looking at whether or not the public would make a goods place association when simply confronted with the mark. And if it's a famous place, they're likely to make the goods place association unless there's something about the mark that would point them away from making that association, which we don't have here. If there isn't sort of that instantaneous goods place association where we can presume that it's made and make the 2E refusal, then the question is, 2E2 refusal, I'm sorry, then the question is, do we need to look in a little bit deeper? Is the term maybe remote and obscure to the extent that we need to see if there's actual evidence of a goods place association? It depends not just on whether or not people know about Newbridge, Ireland or Newbridge in general. What matters is when people see these goods in commerce with that mark, are they going to make the association? And to your point, Judge... The association, what is the association? It's just a place in general or that it's this little town in Ireland? Neither, Your Honor. The association is that it's used in the mark as a description of the source of those goods. That's always the inquiry in trademark law. Does the mark describe the source of goods or does it describe something about the goods? Let me ask you about that because this is – assuming we get past the procedure and that it's obscure or remote under whatever test, why does Newbridge Home in this case describe the geographic origin of the goods rather than they just came from the Newbridge company? Your Honor, as a fact... Clearly, Newbridge is not known for making home goods. At least that's what I understand. This company in Newbridge is famous for it. Well, to the extent that we're now speaking about that they're the source of the fame of the town, that they put the town on the map, things like that, that is an entirely fair argument for them to make. But they have to make it in the context of a 2F registration. And if we were at a point where anytime someone used a mark in connection with their goods that described its origin and you could search the internet and figure that out, you say, well, that's a problem because then everything gets refused under 2E2. No. What happens is applicants then have to show what they have tried to show up and down just in the wrong context, which is that consumers associate Newbridge with them. They built Newbridge. They're Waterford. They're Hershey. They're the source of the fame of that town. They are totally entitled to do that, and if they can do that, if they're right, they can get the registration. They just can't come in and use a term that describes their town accurately and then get a monopoly on the name of the place. What if they had come back, given all the evidence that PTAB had before it, and they had come in and been willing to spend $10 million on a survey and went to every shopping mall in the major city in the U.S. and asked people walking by, have you ever heard of Newbridge, Ireland? And the responses were overwhelmingly never heard of that, overwhelmingly. Would that be sufficient to dislodge the PTAB's findings with regard to the Wikipedia and all of this stuff? If they build an evidentiary record that essentially demonstrated that there was no substantial evidence, because this is a substantial evidence review, that supported the board's holding, then yes, the board could take that sort of evidence. They haven't endeavored to do that. All they've done is they have found their own obscure maps that don't have their city on it. They haven't looked at their own website that has a map with their city on it. I mean, that's the other thing that's strange about this case. As a company, they are undoubtedly associating themselves with Newbridge, Ireland. Their website has links to tour guides. Their website has maps. They sell their goods in the United States, yes, in Irish specialty shops. They sell their goods on their website. They have the name of their town on every single page. They have U.S. dollars there. Clearly, when consumers are confronted with their products, they are confronted with them in an environment where they are just as soon confronted with the regional origin of their goods. That's what's strange about their position. If they are so right that they put that town on the map, they can simply get a registration under Section 2F, but they cannot get a monopoly on the name of the town. And I see that I'm out of time. That's okay. We'll let him. I'd like to address one of Judge Lynn's questions, and that has to do with the well-knownness. How well-known does this have to be? That inquiry is not relevant under 2E2. It's relevant under 2E3. That is, if a mark is refused because it's primarily geographically misdescriptive, and deceptively so, that's when we have to get into the showing that not only is it geographically misdescriptive, but that consumers are so well aware of the normal association, and they want to buy goods with that mark, that they are being deceived. For the purposes of a 2E2 refusal, we do not have to show that it is well-known that people would make this assumption, and we don't need to show that here because they can overcome it. I mean, if it's a problem, they can get around it if they're right. With respect to 2E2, primarily geographically descriptive, my understanding is that if there's any question about whether the mark is obscure or not generally well-known as a name of a place, then the Patent Office has an additional burden to establish this goods place association. And in this case, I've looked at the record, I've looked at the evidence that the Board relies on, and I'm coming up a little bit short. For example, on page 8 of the Board's opinion, it talks about, on its website, applicant describes the history of Newbridge and applicant's role in establishing the town as a center for cutlery and silverware production. This sounds to me like the Board is saying that there's a piece of evidence that shows a goods place association. And I looked at that evidence, and I couldn't find anything that establishes the town as a center for cutlery and silverware. And I haven't found anything on this record that establishes this town as being known for cutlery or silverware. Am I missing something? You may be, Your Honor. The evidence that's being cited is on page A33 through 35 of the appendix. It's a copy of the website page. The closest thing I found is some statement that says, talking about the history of the formation of this company, talking about a great deal of research and correspondence was exchanged between two men in Newbridge and Sheffield, the home of cutlery in the United Kingdom as an idea was created. A little hard to follow, but that to me, at best, that says that in 1921, two or three, these two people came up with the idea of establishing this place as the home of cutlery. But that doesn't establish that it is a place known for cutlery. Well, and then it goes on to say, a whole new generation and market recognizes Newbridge silverware as a major name in design for many aspects of their lifestyle, jewelry, accessories, gifts. But that's referring to the company. It's referring to the company with the company's name that in the previous paragraph was the name of the town. In other words, if we're looking for evidence that the name of the town is associated with their goods, it's right there in those pages that you read. Why wasn't that the case with Battelle though? Couldn't somebody have looked up on the Internet and looked up the Battelle company and found that it was located in Battelle, France? This is the problem with all of these obscure names. If your test is, can somebody look up, I'm sorry, I'm taking you way over, but if the test is you can look up on the Internet where the company is located and then you know that the goods come from there, then even the most obscure marks are never going to be registered. So once we're down this road of the mark might be obscure and we look to the second level of evidence, the evidence Judge Lynch has pointed to about Newbridge, the evidence you, Judge Hughes, just pointed to about Battelle, the Battelle evidence is different. So in Battelle, they saw, you could have found the name of this town and perhaps you could have found this connection between that name and Mineral Water. The problem in Battelle is that the board made this link. They said, okay, now that it's known and it's known for Mineral Water, people seeing it on something that's not Mineral Water makeup, they would make this kind of secondary leap and they would just assume that since they know Battelle for Mineral Water, there somehow must be Mineral Water in this makeup. That is what was rejected by this court in Battelle. And although in their gray brief, Newbridge says we're mischaracterizing Battelle, that's in fact exactly what Battelle says. And what they say is that they were reversing the board. Am I hearing you that what was rejected was basically the board didn't get the reasoning right. If they had said, if somebody looked up the Battelle cosmetic company on the website and saw that it came from Battelle, that would have probably been substantial evidence on the Good Place Association. Yes, and the beginning of your question was about the reasoning. I think it's about the evidence and what the court said in Battelle is that they were reversing the board for want of evidence showing that the American cosmetic purchasing public is aware of this. So if we accept your argument, then now the examiners are just going to do a web search on the company's name and note that the website notes that they're from the specific place they're describing and say that's enough to get a Good Place Association and then we're going to have to affirm. If the goods are actually from that place, Your Honor, they're going to have to do exactly what consumers do. That's how consumers shop and that's how Good Place Associations are ultimately made and I would submit that there's nobody that would look in, that would type Newbridge Home into the internet and look at their website and not come away thinking that the Newbridge was a town in Ireland from which their goods would emanate. If there's no further questions. Thank you. Just a couple of points. Apropos of the internet issue, in Namibia the fact that information about a place is generally available if one were to search on the internet does not in itself make the place generally known. That's the TTAB. That's how in terms of who the relevant public is. We are dealing with run-of-the-mill cosmetic purchasers, not the unusually well-traveled aficionados of European war places or computer operators seeking out the meaning of strange words on Nexus. The issue is not what you can find out if you do some search that you might be inclined to do or not inclined to do. It's what does the relevant public know now prior to making all those inquiries. If you make the inquiries, of course you're going to find the smoking gun that's going to prevent the PTO from permitting you to register. If you don't make the inquiries but you know about it generally and the PTO can demonstrate that, then the relevant buying public will make the Goods Place Association. But if the relevant buying public, before they know about it, doesn't know about the Goods Place Association and then does an internet search, of course they're going to find it because that's what the internet is all about. That's number one. Number two, I think the appellee has conceded, in a sense, that they are required to make the Goods Place Association. The point that we're making is the Goods Place Association has to be with respect to the relevant purchasing public, that being the people who buy home goods or homewares. There's no evidence in the record whatsoever that any member of that group of consumers is aware that Newbridge, Ireland, is a place where Newbridge products come from. There's no Goods Place Association evidence with respect to any member of the relevant buying public. It's just completely devoid of any evidence whatsoever. We're not talking about people who, as they say in Battelle, make computer inquiries or who are unusually well-traveled. We're talking about the run-of-the-mill homeware purchaser. There's no evidence whatsoever as to what that public knows prior to doing the internet search that the examining attorney did. Well, short of doing surveys, are you suggesting that therefore in every case, the board would have to rely on survey evidence, go out and figure out who the relevant public is and do a survey of those? Well, I don't think they have to do a survey, but they have to come up with more than simply the company's own website, which of course is going to be the evidence that's going to be sort of circular. It's like, you're from Newbridge. How do we prove it? Because you say that you're from Newbridge on your website. Well, I guess people can stop putting up websites, but I don't think that's evidence of what the relevant public knows prior to making that kind of search. Where do you draw the line on what's substantial evidence and what's not substantial evidence? I mean, I assume that if your company had placed advertisements in the New York Times, Washington Post, the Chicago paper, the LA paper, and the P tab pointed to that as evidence that the public probably knows that Newbridge is, and it identified Newbridge, Ireland in those ads, that that would probably be good enough evidence to show that the general public knows that your company is selling goods from Newbridge. I would agree, yes. But so they pointed to other evidence that they found in Internet searches showing that Newbridge is a place which is articles from perhaps not as famous papers, but other things on the Internet. The trouble I have here is setting up a principled way for me to decide what is substantial evidence and what is not when all the P tab is going to be able to do, unless we force them to do surveys, which we, I don't think, can, is look at publicly available information. But I think there has to be... That's true, but the cases, like Namibia says, the Namibia case says there's no evidence as to how many people have accessed these websites. I mean, some of the websites that are referred to here are basically, you know, the town council of Newbridge, Ireland. Of course they're going to have a website. Or, you know, some woman who started a mental health facility in Massachusetts is going to go on a tour, and one of the places she's going to is Newbridge, Ireland. None of that is dispositive of the issue whether the relevant public in America either knows about Newbridge or, more importantly, will make a goods place association with Newbridge. There has to be some sort of, I think, showing that, I mean, the company has a higher profile or, you know, has made some effort to specifically identify itself in a substantial way rather than in a passive way. Final point. Waterford was mentioned. Waterford Crystal did not have to jump through the 2E hoop. They registered in 1973 under 1A, which was basically the standard registration provisions. No geographic issue there. The same with Naxon, page 353 of the record. Page 356, Bellic, a company in Bellic County, Ireland. Again, a 1A registration. No hoops to jump through there. Bellic, again, they did it twice. You want to give us one final thought? The clock has run out. I... Oh, the Lowe's case. The Lowe's case is not... They used the gazetteer. Basically, they used the gazetteer to demonstrate that Lowe's, that Durango in Mexico, was well-known as a tobacco-growing place, and so using the name Durango was misleading and deceptive, so it was not a... Thank you. We thank both parties. The case is submitted. That concludes our proceedings.